## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BANK OF AMERICA, NATIONAL : | CIVIL ACTION NO. 1:12-cv-544 |
| ASSOCIATION, as successor by merger : | |
| to LaSalle Bank National Association : | |
| as Trustee for Certificateholders of : | |
| EMC Mortgage Loan Trust 2005-B, : | |
| Mortgage Pass-Through Certificates, : | |
| Series 2005-B, : | |
| : | |
| **Plaintiff** : | |
| : | |
| v. : | **(Chief Judge Conner)** |
| : | |
| TIMOTHY L. MARTIN, MARY ELLEN : | |
| MARTIN, AND FIRST AMERICAN : | |
| TITLE INSURANCE COMPANY, : | |
| : | |
| **Defendants** : | |

## MEMORANDUM

Presently before the court, in the above-captioned matter, is a motion (Doc. 11) to dismiss the amended complaint (Doc. 6), pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6), filed by defendant First American Title Insurance Company ("First American"). The parties have fully briefed the issues and the motion is ripe for disposition. For the reasons that follow, the court will grant First American's motion.

## I.   Factual and Procedural History

The instant matter arises out of a loan transaction between Timothy L. Martin and Mary Ellen Martin (collectively, "the Martins") and National Future Mortgage, Inc., entered into on August 20, 1998. (Doc. 6, ¶ 11). In that transaction, National Future Mortgage loaned the Martins the sum of $96,300. (Id.) The loan

was represented by a note and was intended to be secured by a mortgage on two adjoining parcels of land in Chambersburg, Pennsylvania. (Id. at ¶¶ 12-13). The first parcel, identified in tax assessment records as Tax Parcel 10-D-28-015A, consists of two tracts ("Tracts 1 and 2") with a street address of 5045 Wayne Road, Chambersburg, Pennsylvania. (Id. at ¶ 12). The second parcel, Tax Parcel 10-D-28-015B, is a single tract of land ("Tract 3") at the street address of 5051 Wayne Road, Chambersburg, Pennsylvania ("5051 Wayne Road").[1] (Id.). 5051 Wayne Road is landlocked and is unreachable without access to 5045 Wayne Road. (Id. at ¶ 26).

At the time the Martins and National Future Mortgage entered into the mortgage transaction, no legal description of the property to be encumbered was attached to or otherwise included in the mortgage documents; rather, the mortgage

---

[1] The legal description of the combined parcels is as follows:

> ALL THAT CERTAIN real estate lying and being situated in Guilford Township, Franklin County, Pennsylvania, bounded and described as follows:
>
> BEGINNING at an iron pin at corner of lands of David M. Martin and on line of lands of Ralph Hepfer on a plan of lost hereinafter referred to; Thence by lands of David M. Martin, North 61 degrees 51 minutes 56 seconds West, 105.81 feet to set iron pin; Thence by the same, north 14 degrees 53 minutes 19 seconds East; 119.73 feet to an existing iron pin; Thence by the lands of Hepfer, South 14 degrees 53 minutes 19 seconds West, 111.12 feet to a set iron pin, being the place of beginning, Being Parcel Numbers D-28-15A & D-28-15B.

(Id. at ¶ 10). This description was not attached to the original mortgage, but has since been incorporated in the reformed mortgage.

inadvertently identified the property only by reference to the street address of 5051 Wayne Road. (Id. ¶ 13). After the mortgage was originally signed and recorded, it was reassigned several times. At some point in the process of these reassignments, a legal description of Tract 1 was incorporated into the documentation. (Id. at ¶ 14; see also Doc. 12 at ¶¶ 4-8). (Doc. 1-1, Ex. F). Bank of America ("Bank of America" or "the Bank"), as trustee, is the current investor and owner of the subject mortgage and note. (Doc. 6 at ¶ 14).

The Martins subsequently defaulted on their payment obligations. (Id. at ¶ 15). On February 25, 2008, foreclosure counsel initiated a civil mortgage foreclosure action in the Court of Common Pleas of Franklin County, Pennsylvania. (Id. at ¶ 16). Relying on the description attached to the reassignment documentation, the foreclosure complaint contained a legal description of Tract 1. (Id.). However, on May 5, 2008, counsel for Bank of America substituted by praecipe the legal description of Tract 3 with the street address of 5051 Wayne Road. (Doc. 12, ¶ 10). The foreclosure action was successful and resulted in a sale, at which the Bank was the highest bidder. (Id. at ¶ 17). On August 10, 2009, the Bank received a Sheriff's Deed from Franklin County, transferring title only to 5051 Wayne Road/Tract 3. (Id.) When the Bank attempted to resell the property in April 2010, it learned, for the first time, that the mortgage had not encumbered the whole of the combined tracts. (Id. at ¶ 18). Without rights to 5045 Wayne Road, the foreclosed on property at 5051 Wayne Road is unmarketable.

As part of its original loan transaction with the Martins, National Future Mortgage contracted with an agent of First American to procure, *inter alia*, a title insurance policy securing for National Future Mortgage a first priority mortgage interest in the combined parcels. (Doc. 6 at ¶ 21).  A title insurance policy was issued to National Future Mortgage and, according to the amended complaint,[2] insured it against loss or damage incurred by reason of the following:

1.   Title to the estate or interest . . . being vested other than as stated . . . ;
2.   Any defect in or lien or encumbrances to the title;
3.   Marketability of the title;
     . . .
5.   The invalidity or unenforceability of the lien of the insured mortgage;

(Id. at ¶ 25).  The policy also provided that "[t]he company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations." (Id.)

Upon learning that it held title only to the landlocked Tract 3 and not the combined parcels, Bank of America notified First American of its intent to file a claim under its title policy on April 19, 2010.  (Id. at ¶ 27; see also Doc. 1-1, Ex. E). On July 28, 2011, First American responded, denying coverage on the grounds that the claim was premature.  Specifically, it concluded that the foreclosure action was incomplete due to the Bank's failure to foreclose on the remaining two tracts.  (Doc. 6 at ¶ 29). First American encouraged the Bank to initiate foreclosure proceedings

---

[2] The court notes that parties have not supplied it with a copy of the subject insurance policy.

against the combined parcels before submitting its claim. (Doc. 12 at ¶ 15; <u>see also</u> Doc. 1, Ex. F). The parties exchanged additional correspondence but were unable to reach a resolution. (<u>See</u> Doc. 1, Exs. G, H, I; Doc. 12, Ex. H).

Bank of America commenced this action on March 26, 2012. On April 17, 2012, the Bank filed an amended complaint (Doc. 6). In Count I, the Bank asserted a claim against the Martins for reformation of the subject mortgage to represent the parties' intents at the time the mortgage was executed. The Martins failed to make any appearance and did not otherwise respond to the complaint, and on September 10, 2012, the Clerk of Court entered a default against them pursuant to Federal Rule of Civil Procedure 55(a). (Doc. 31). The Bank then moved for default judgment against the Martins pursuant to Rule 55(b). (Doc. 33). On March 27, 2013, the court conducted a hearing to determine the original intent of the parties, during which the Bank presented uncontested evidence that the parties to the mortgage intended the said mortgage to encumber not only the property known as 5051 Wayne Road but also the property known as 5045 Wayne Road. The court therefore entered default judgment against the Martins and in favor of the Bank, and ordered the mortgage to be reformed to encumber the entirety of the Martins' properties, specifically Tracts 1, 2, and 3, as of the date of the original filing. (Doc. 44 at 5).

The Bank's amended complaint also asserts various claims against First American. In Count II, the Bank seeks a judgment declaring that: (1) its loss with respect to the foreclosure on 5051 Wayne Road is covered under the title policy; (2) it is entitled to reimbursement for attorney's fees and costs relating to the defense,

investigation, and prosecution of the case *sub judice* and related matters; (3) First American is required to remove any defects on the Bank's title interest in the combined parcels, to cure any claims of unmarketable title, and to otherwise establish the Bank's position as first priority lien holder on the combined parcels; (4) First American has waived its right to deny coverage to the Bank; and (5) First American is required to take other action as required under the title policy. The Bank further seeks damages for breach of contract and bad faith denial of coverage (Counts III and IV).

Proximate to the filing of the present suit, a competing lien holder initiated a separate civil action in state court which names Bank of America as a defendant and challenges the priority of the Bank's mortgage. (Doc. 12, Ex. G). The Bank requested that First American provide it with a defense in that case, and First American agreed to do so. (Doc. 12 at ¶ 16). First American subsequently requested that Bank of America withdraw the present suit without prejudice pending resolution of the state court action, presumably because resolution of the state court claims may moot the issues *sub judice*. The Bank declined this request. (Doc. 12, Ex. H).

First American now moves to dismiss the claims against it pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(5) for lack of personal jurisdiction and insufficient service of process. Pursuant to Rule 12(b)(6), First American also asserts that the Bank has failed to state a meritorious claim for declaratory relief, breach of contract, or bad faith denial of coverage as alleged in counts II-IV of the

amended complaint. The Bank's motion has been fully briefed (Docs. 12, 13, 15) and is ripe for disposition.

## II.    <u>Standard of Review</u>

Rule 4 of the Federal Rules of Civil Procedure prescribes the process for properly issuing and serving a summons. Fed. R. Civ. P. 4. A defendant may move to dismiss the complaint pursuant to Rule 12(b)(5) when the plaintiff fails to comply with the requirements of Rule 4. Fed. R. Civ. P. 12(b)(5).[3] In all challenges to the sufficiency of the service of process, the burden of proof lies with the party raising the challenge. <u>See</u> 2 Moore's Federal Practice § 12.33[1] (3d ed. 2013); <u>Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.</u>, 988 F.2d 476, 488 (3d Cir. 1993); <u>Snyder v. Bender</u>, No. 1:09-CV-927, 2010 U.S. Dist. LEXIS 130438 (M.D. Pa. Nov. 16, 2010).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light

---

[3] First American also objects to the manner of service pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, alleging that because service of process was insufficient, the court lacks personal jurisdiction over the defendant. Motions under Rule 12(b)(2) are reserved for challenges to the existence of jurisdiction over the *person* – or in this case, company – served, while a Rule 12(b)(4) motion challenges the *form* of process, and a Rule 12(b)(5) motion challenges the *method* of serving process. 2 Moore's Federal Practice § 12.33[1] (3d ed. 2013); <u>Shong Ching Lau v. Change</u>, 415 F. Supp. 627, 630 n.3 (E.D. Pa. 1976). Defendant here challenges only the propriety of the method used to serve First American; therefore, the objection is properly brought under Rule 12(b)(5).

most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Gelman v. State Farm Mut. Auto. Ins. Co.</u>, 583 F.3d 187, 190 (3d Cir. 2009) (quoting <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)); <u>see also</u> <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); <u>see also</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." <u>Phillips</u>, 515 F.3d at 232 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. <u>See</u> <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while legal conclusions may be disregarded. <u>Id.</u>; <u>see also</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."

8

Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When the complaint fails to present a prima facie case of liability, however, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116–17 (3d Cir. 2000).

## III.   Discussion

### A.   Service of Process

As a threshold matter, First American argues that the claims against it should be dismissed because the Bank failed to perfect service of its original complaint. On April 6, 2012, Bank of America served its original complaint by certified mail.  The summons was addressed to First American's claims department at their corporate headquarters located in Santa Ana, California (Doc. 4), and First American concedes that an employee received the complaint and signed a return receipt for the summons.  First American nonetheless posits that such service was legally insufficient because a foreign corporation may not be served by mail under state or federal law.

Federal Rule of Civil Procedure 4(h)(1)(A) states that a party may serve a corporation in the manner prescribed by Rule 4(e)(1), to include "following state law for serving a summons in an action brought in courts of general jurisdiction in

the state where the district court is located . . . ." Fᴇᴅ. R. Cɪᴠ. P. 4(h)(1)(A), 4(e)(1).[1]

State law, specifically Rule 404 of the Pennsylvania Rules of Civil Procedure,

permits mail service upon foreign defendants "in the manner provided by Rule

403," Pᴀ. R.C.P. 404(2), and Rule 403 in turn provides that to accomplish proper

service by mail, "a copy of the process shall be mailed to the defendant by any form

of mail requiring a receipt signed by the defendant or his authorized agent," Pᴀ.

R.C.P. 403. Pennsylvania courts have consistently construed Rule 404 as applying

to corporations as well as individuals, permitting service by mail on foreign

corporations. See Reichert v. TRW, Inc., Cutting Tools Div., 561 A.2d 745 (Pa.

Super. Ct. 1989), rev'd on other grounds, 611 A.2d 1191, 1193 n.1 (Pa. 1992). Bank of

America's adherence to Rules 403 and 404 was thus appropriate.

        As we have noted, however, state rules further mandate that service by mail

be accompanied by "a receipt signed by the defendant or his authorized agent," Pᴀ.

R.C.P. 403, and the present record does not reflect the identity or title of the First

American employee who signed the certified mail receipt; thus, the court cannot

determine whether this individual was an authorized agent of the Bank. See ASD

Specialty Healthcare Inc. v. New Life Home Care Inc., 2011 U.S. Dist. LEXIS

136819, *7-9 (M.D. Pa. Nov. 29, 2011).

---

[1] Rule 4(h) also provides that a domestic or foreign corporation may be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fᴇᴅ. R. Cɪᴠ. P. 4(h)(1)(B). It is undisputed that Bank of America's service by mail on an unknown clerk at First American's California headquarters is insufficient to meet these requirements.

Although the record is presently unclear on the propriety of service, the court will nonetheless deny First American's motion to dismiss on these grounds. The fundamental purpose of service is to ensure that a defendant receives notice of the suit and has a fair opportunity to present its objections, <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950), and First American openly concedes that it received notice of the suit. In such circumstances, where service may be technically improper but actual notice is nonetheless accomplished, a district court has broad discretion in deciding whether to dismiss the complaint or to quash service. Fed. R. Civ. P. 4(m); <u>Umbenhauer</u>, 969 F.2d 25, 30 (3d Cir. 1992). We will exercise that discretion in the instant matter. Actual notice is undisputed. More importantly, the issue of whether service upon First American satisfied the requirements of Pennsylvania Rules 403 and 404 is of no moment to the court's ultimate disposition of the defendant's motion, because the court is compelled to grant the motion on alternative grounds.

### B. Ripeness

In Count II, Bank of America seeks a declaration under the Uniform Declaratory Judgments Act, 28 U.S.C. § 2201, that its loss is covered by the title insurance policy and that First American must reimburse it for all attorneys' fees and costs relating to this litigation and further must perfect the Bank's title interest as a first priority lien holder on the combined parcels. (Doc. 6 at 10-11). First American posits that the Bank has not yet established the fact of its loss and will

11

not be able to do so until it attempts to foreclose on the combined parcels. (Doc. 12 at 13-17).

The Declaratory Judgment Act of 1934 states that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. Unable to abrogate the constitutional prohibition against advisory opinions, U.S. CONST. art. III, § 2, the Act strictly limits the courts' authority to matters involving a "case or actual controversy." 28 U.S.C. § 2201. To evaluate the existence of an actual case or controversy, and to prevent the courts from prematurely entangling themselves in abstract disagreements, federal jurisprudence has adopted the ripeness requirement. See Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967).

Ripeness is a heavily discretionary doctrine and therefore quite subjective in application. NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 (3d Cir. 2001) ("Ripeness is a matter of degree whose threshold is notoriously hard to pinpoint."). It is primarily a question of timing, concerning whether the plaintiff's alleged injury has yet occurred or is instead based on conjecture, speculation, or a remote contingency. See Felmeister v. Office of Atty. Ethics, Div. of N.J. Admin. Office of Courts, 856 F.2d 529, 535 (3d Cir. 1988). The Court of Appeals for the Third Circuit has identified three factors by which to evaluate the ripeness of a declaratory judgment action: (1) the adversity of the interests of the parties; (2) the conclusiveness of the judicial judgment; and (3) the practical help or utility of that judgment. Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 647-650 (3d Cir.

12

1990); cf. <u>Abbott Labs</u>, 387 U.S. at 149 (setting forth a two-pronged inquiry); <u>Phila.</u>

<u>Fed'n of Teachers v. Ridge</u>, 150 F.3d 319, 323 n.4 (3d Cir. 1998) (noting that the

Third Circuit has employed both the three-part <u>Step-Saver</u> test and the two-part

<u>Abbott Labs</u> test as alternative means to the same end).  The court will address

these criteria *seriatim*.

The first prong of the ripeness paradigm queries whether the claim presents

a real and substantial threat of harm or instead involves uncertain events.  <u>NE Hub</u>

<u>Partners</u>, 239 F.3d at 342 n. 9; <u>Step-Saver</u>, 912 F.2d at 648.  Traditionally, the court

has declined to find ripeness where the chance of the defendant acting against the

plaintiff is "but a contingency." <u>Presbytery of the Orthodox Presbyterian Church of</u>

<u>N.J. v. Florio</u>, 40 F.3d 1454, 1464-68 (3d Cir. 1994); <u>e.g.</u> <u>Armstrong World Indus. v.</u>

<u>Adams</u>, 961 F.2d 405, 411-419 (3d Cir. 1992) (finding insufficient adversity between

state and plaintiffs challenging the validity of a takeover law, because the takeover

of the plaintiffs was a "contingency which may not occur").  The party seeking a

declaration need not have suffered a fully realized harm to establish adversity of

interest, but "must demonstrate that  the probability of that future event occurring

is real and substantial, of sufficient immediacy and reality to warrant the issuance

of a declaratory judgment." <u>Salvation Army v. Dep't of Cmty. Affairs</u>, 919 F.2d 183,

192 (3d Cir. 1990); <u>Florio</u>, 40 F.3d at 1463.

A significant contingency remains here insofar as the Bank has failed to

establish a covered loss for which it can be indemnified.  This uncertainty is critical

because title insurance is a contract of indemnity against loss, not a guarantee of

title, and the insured is entitled to indemnity only to the extent that its security is impaired. <u>Diversified Mortg. Investors v. U.S. Life Title Ins. Co.</u>, 544 F.2d 571, 574 n.2 (2d Cir. 1976) (citing <u>Sattler v. Phila. Title Ins. Co.</u>, 162 A.2d 22, 24 (Pa. Super. Ct. 1960) ("Unless and until a loss occurs, there is no liability.")); <u>see also</u> <u>Foothill Capital Corp. v. Commonwealth Land Title Ins. Co.</u>, 1987 U.S. Dist. LEXIS 13783 at *4-5 (E.D. Pa. Nov. 13, 1987). Thus, in the case of a mortgagee-insured, it is not the mortgage note that is insured, but rather the loss resulting from a defect in the security. <u>Falmouth Nat'l Bank v. Ticor Title Ins.</u>, 920 F.2d 1058, 1063 (1st Cir. 1990).

Here, the mortgage note initially failed to encumber the combined parcels; however, it is not yet known whether the Bank's security is itself impaired. The Bank has only foreclosed on one of the parcels in question, and there is some question as to the validity of its efforts. (See Doc. 12 at 17-20 (arguing that the inconsistencies between the legal descriptions of the property foreclosed on and the legal description in the Bank's assignment render the foreclosure defective)). In any event, the Bank, armed with the court's reformation order, has not yet attempted to renew foreclosure proceedings nor has it taken any other action that would demonstrate that its interest in the properties is less than that guaranteed by the insurance policy. While it is true that the Bank's failure to foreclose on the combined parcels may have stemmed from its reliance on the deficient mortgage, the complaint does not indicate that these deficiencies were among the contingencies insured against. As First American notes, the Bank may yet validate its interest in the properties by re-foreclosing on the combined parcels, attempting

14

to reform the sheriff's deed that it holds with respect to 5051 Wayne Road, or prevailing in the state court action challenging the priority of its interest in the properties. (Doc. 12 at 14-15). In light of the court's order reforming the Bank's mortgage to encumber the combined parcels, these options may prove particularly fruitful. Regardless of whether the Bank succeeds, however, the fact and scope of its loss remain matters of speculation unless and until it takes such action to determine definitively whether its interest is impaired.

Bank of America offers two cases for the propositions that (1) an insurer's default arises at the execution of the policy and (2) an insured's loss need not be "definitely ascertained" before it is considered a legal loss. See Fifth Mut. Bldg. Socy. of Manayunk's Appeal, 176 A. 494, 496 (Pa. 1935) (finding that the insurer's default was "practically contemporaneous with the execution of the contract of indemnity."); Trigiani v. Am. Title Ins. Co., 573 A.2d 230, 232 (Pa. Super. Ct. 1990) (rejecting argument that an insured may only suffer a loss if it is unable to purchase the property at foreclosure and later sell it at a profit). Relying on Fifth Mutual and Trigiani, the Bank asks the court to find that its loss is concrete, having occurred at the moment the mortgage note was signed without a legal description of the properties. (Doc. 13 at 12-13). Both of these cases, however, are inapposite.

Neither Fifth Mutual nor Trigiani involved questions of whether a covered loss had occurred; rather, both dealt with valuation of an ascertained loss. The insureds in both cases held policies insuring against undiscovered liens, and it was undisputed that they had suffered losses when liens displacing their respective

15

mortgages were later found.  Having preliminarily concluded that a covered loss existed, <u>Fifth Mutual</u> went on to address the point from which the loss should be valued, <u>see</u> 176 A. at 496-97, and <u>Trigiani</u> held that an insured need not purchase the property at foreclosure to establish the value of its loss because the value of its mortgage disappeared when it lost its insured priority.  <u>See</u> 573 A.2d at 232.  The principal holdings of both cases are thus immaterial to the instant matter, where the Bank has not yet shown that it suffered a loss "distinctly insured against."  <u>Fifth Mutual</u>, 176 A. at 495.  At this juncture, there is no indication that First American's promises of good title are not intact, nor that the value of the Bank's security in the combined parcels is in any way impaired. The fact of the Bank's loss is "but a contingency."

Turning now to the second prong of the ripeness test, the court must consider whether the declaration sought would be based on "a real and substantial controversy admitting of specific relief through a decree of a conclusive character," or instead "an opinion advising what the law would be upon a hypothetical state of facts." <u>Florio</u>, 40 F.3d at 1463-67 (internal quotations omitted); <u>Step-Saver</u>, 912 F.2d at 647-50.  When the decree sought is based on a contingency, there is a strong likelihood that the objective is an advisory opinion.  <u>See</u> <u>Step-Saver</u>, 912 F.2d at 648 (where parties "would be left to do battle" on liability even if the court issued the declaration, declaratory judgment is inappropriate).  <u>Id.</u>  The case at bar is a classic example.  First American's default has yet to be established: even if the court were to decree the parties' respective rights under the insurance policy, the Bank would

still be left to re-foreclose on the combined parcels or take other appropriate action to determine if it had in fact suffered a covered loss.  The determination of First American's liability would be speculative, entirely dependent on a future finding that the Bank's security interest in the parcels is impaired. Hence, the requested declaration would do little to bring finality to this dispute and weighs against a finding of ripeness.[1]  Step-Saver, 912 F.2d at 649 ("Construing a contract and making law without finding the necessary facts constitutes advisory opinion writing, and that is constitutionally forbidden.").

Finally, the third prong of the Step-Saver test requires the court to assess the utility of the requested declaration. Step-Saver, 912 F.2d at 649 (holding that a case "should not be considered justiciable unless the court is convinced that by its action a useful purpose will be served").  Even if a declaratory judgment would clarify the parties' legal rights, it should ordinarily not be granted unless "the parties' plans of actions are likely to be affected." Id. at 649 n.9.  The court concludes that they will

---

[1] In Aetna Life, the Supreme Court found justiciable an insurance company's request that a disability policy be declared null and void for the insured's failure to pay premiums.  The Court determined that, although this dispute hinged on a contingency – namely, whether the payments had been made – this did not "withdraw it . . . from judicial cognizance." 300 U.S. at 242.  Nevertheless, instances in which courts make a declaration absent proof of a necessary fact should be limited to occasions when, for example, the future event is "certain to occur, such as enforcement of an existing statute or the death of a life-tenant or the future expiration of a contract, franchise, or lease." Step-Saver, 912 F.2d at 649 n.7.  On this basis, the Step-Saver court declined to hear a case where a contingency depended on the outcome of additional court proceedings. Id. at 648-49.  Bank of America's request for indemnification similarly hinges on future court proceedings, specifically, foreclosure on the combined parcels, a reformation of the sheriff's deed, or results of the pending state court action.

not.  The decree sought by the Bank would interpret the parties' responsibility in the event of a covered loss.  However, the occurrence of a loss is still speculative, and the Bank must take the same actions to protect its interest in the combined parcels regardless of whether the court issues a declaration. Moreover, the declaration will not be "of significant practical help in ending the controversy," Step-Saver, 912 F.2d at 650, because First American does not necessarily dispute its responsibilities under the policy, only whether those responsibilities have been triggered. (See Doc. 1-1, Ex. F).  To this end, First American continues to defend the Bank in the state action challenging its priority interest in the combined parcels.  It may be a hardship to Bank of America to retrace its steps and re-foreclose on the combined parcels; however, such action is a necessary predicate to establishing whether it has a covered loss and must be taken regardless of whether the court issues the requested declaration.  Weighing these considerations along with the court's conclusions *supra*, the court concludes that the present action is not ripe for declaratory judgment.  To rule otherwise would put the court in the untenable position of issuing an advisory opinion based on speculation and uncrystallized legal positions.  Plaintiff's request for a declaratory judgment will therefore be denied without prejudice.

### C.       Failure to State a Claim for Breach of Contract

In Count III of the amended complaint, the Bank alleges that First American breached its obligations under the title insurance policy by failing to "acknowledge, accept or undertake fully its obligations to eliminate the encumbrance on [Bank of

America's] Mortgage lien, to pay and determine [Bank of America's] loss suffered as a result of its non-marketable title, and to undertake an appropriate investigation regarding the facts giving rise to [Bank of America's] claim."  (Doc. 6 at ¶¶ 47-52).

To prevail on a breach of contract claim under Pennsylvania law, a plaintiff must establish three elements: (1) the existence of a contract, including its essential terms; (2) defendant's breach of duty imposed by that contract; and (3) actual loss or injury as a result of that breach.  See JML Indus. v. Pretium Packaging, LLC, 2007 U.S. Dist. LEXIS 491 at *4 n.3, *14 (M.D. Pa. Jan. 5, 2007) (citing Omicron Sys. v. Weiner, 860 A.2d 554, 564 (Pa. Super. Ct. 2004)).  It is undisputed that a contract for title insurance exists between the parties.  However, based on its assessment that the insurance claim was premature, First American argues that the complaint does not raise a plausible claim for either breach of that contract or loss thereunder.

The twin holdings of Twombly and Iqbal require a plaintiff to show a "plausible claim for relief," with facts sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-56; see also Iqbal, 556 U.S. 662.  In the matter at bar, the Bank's allegation that First American breached its contractual duty is entirely dependent on the assumption that the Bank suffered a covered loss triggering indemnification.  In light of the court's finding to the contrary, *supra*, these allegations are unsustainable.  Without a covered loss, First American owed no duty to indemnify Bank of America.  Hence, there can be no plausible claim for breach of duty or a loss arising therefrom.  Unless and until the Bank can show that it suffered a covered loss contemplated by the title insurance contract, a claim for

19

breach of that contract is speculative. The court will thus grant First American's

motion to dismiss Count III without prejudice.

### D.    Failure to State a Claim for Bad Faith Denial of Coverage

Bank of America lastly asserts a claim against First American for bad faith

denial of coverage pursuant to 42 Pa.C.S. § 8371. (Doc. 6 at ¶¶ 53-55). The Bank

alleges that First American's refusal was in bad faith because:

> (1) the law in Pennsylvania makes plain that First
> American's denial of coverage is in violation of the terms
> of the Policy; (2) First American failed to pay [Bank of
> America] for its loss within a reasonable time after it was
> suffered; (3) First American failed to investigate and
> adjust the loss suffered by [Bank of America]; (4) First
> American acted in violation of its duty to its insured by
> putting its own interest ahead of [Bank of America]; and
> (5) First American failed to affirmatively take steps which,
> under the circumstances, it could and should have done
> [sic], had it acted fairly and honestly towards its insured
> and with due regard for its insured's interest.

(Doc. 6 ¶ at 54).  In order to prove insurer bad faith under § 8371, a plaintiff must

show that the insurer: (1) did not have a reasonable basis for denying benefits; and

(2) knew or recklessly disregarded its lack of a reasonable basis for denying the

claim.  Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 522 (3d Cir. 2012) (citing

Condio v. Erie Ins. Exch., 899 A.2d 1136 (Pa. Super. Ct. 2006)).  Pennsylvania courts

have described bad faith conduct as "any frivolous or unfounded refusal to pay

proceeds of a policy," further noting that "it is not necessary that such refusal be

fraudulent." Terletsky v. Prudential Prop. and Casualty Ins. Co., 649 A.2d 680, 688

(Pa. Super. Ct. 1994).  Rather, bad faith ordinarily imports "a dishonest purpose and

means a breach of a known duty (i.e., good faith and fair dealing) through some motive of self-interest or ill will." Id. Nevertheless, "a reasonable basis for denying coverage is all that is required to defeat a claim of bad faith." J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004).

The allegations which Bank of America sets forth in Count IV are little more than bare legal conclusions. (See Doc. 6 at ¶ 54). Such statements, without more, are insufficient to satisfy federal pleading standards. Twombly, 550 U.S. at 555 (stating that the well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded). These assertions notwithstanding, the facts stated in the remainder of the complaint are also insufficient to establish that First American acted unreasonably in denying the Bank's claim. The Bank primarily challenges the reasonableness of First American's denial of coverage. However, as we have held *supra*, the Bank has not yet suffered a covered loss for which it could be indemnified. First American's failure to provide benefits thus cannot form the basis of a § 8371 bad faith claim.

This does not end our inquiry because the absence of a duty to provide benefits does not *per se* render the insurer's denial reasonable. See 42 Pa.C.S. § 8371 (permitting punitive damage awards even in the absence of other successful claims brought by the plaintiff); Willow Inn, Inc. v. Public Service Mut. Ins. Co., 399 F.3d 224, 235 (3d. Cir. 2004). The Third Circuit has cautioned, however, that cases in which an insurer may be liable for bad faith even though there was no duty to provide coverage are "exceedingly rare." Post, 691 F.3d at 524 (citing Gallatin Fuels,

Inc. v. Westchester Fire Insurance Co., 244 F. App'x 424 (3d Cir. 2007) (non-precedential) (insurer found liable for bad faith absent duty of coverage on the grounds that it "dragged its feet in the investigation of the claim, hid information from the insured, and continued to shift its basis for denying the claims.")). In the instant matter, there is simply no suggestion whatsoever that First American's handling of the claim was egregious. The record reveals that, at the outset, First American fully investigated the foreclosure action and adopted its position that the claim was premature, advising the Bank as to what actions were necessary to protect the Bank's claim. (Doc. 1-1, Ex. F). While subsequent correspondence reveals disagreement between the parties over the existence of a covered loss (see Doc. 1-1, Exs. G, H, I; Doc. 12, Ex. H), mere disagreement does not give rise to a bad faith claim. Terletsky, 649 A.2d at 688. Accordingly, the court concludes that there is no plausible claim that First American acted in bad faith in denying benefits for lack of a covered loss, and First American's motion to dismiss the Bank's claim for bad faith denial of coverage will therefore be granted. Further, as it is pellucidly clear from the amended complaint and attached documents that First National was diligent in its investigation, prompt in its response, and reasonable in its resolution of the Bank's claim, leave to amend will be denied.

**IV.** **Conclusion**

      For the foregoing reasons, the court will grant First American's motion (Doc.

11) to dismiss. An appropriate order follows.

                  /S/ CHRISTOPHER C. CONNER
                  CHRISTOPHER C. CONNER
                  Chief Judge, Middle District of Pennsylvania

Dated:      September 12, 2013

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BANK OF AMERICA, NATIONAL ASSOCIATION, as successor by merger to LaSalle Bank National Association as Trustee for Certificateholders of EMC Mortgage Loan Trust 2005-B, Mortgage Pass-Through Certificates, Series 2005-B,** | : : : : : : : : | **CIVIL ACTION NO. 1:12-cv-544** |
| **Plaintiff** | : : | |
| **v.** | : : | **(Chief Judge Conner)** |
| **TIMOTHY L. MARTIN, MARY ELLEN MARTIN, AND FIRST AMERICAN TITLE INSURANCE COMPANY,** | : : : : | |
| **Defendants.** | : | |

## ORDER

AND NOW, this 12th day of September, 2013, upon consideration of the

motion to dismiss (Doc. 11) by First American Title Insurance Co. ("First

American"), and for the reasons set forth in the accompanying memorandum, it is

hereby ORDERED that defendant's motion to dismiss (Doc. 11) is GRANTED, and

plaintiff's first amended complaint is DISMISSED without prejudice.

/S/ CHRISTOPHER C. CONNER
CHRISTOPHER C. CONNER
Chief Judge, Middle District of Pennsylvania